UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD MOLINA,
                    Plaintiff,
        v.

CITY OF ROCHESTER,
                    Defendant.

**DECISION & ORDER**
13-CV-6607



### Procedural History

Plaintiff   Richard   Molina   (hereinafter   "plaintiff"   or
"Molina") filed this action alleging unlawful discrimination and
retaliation under the Americans with Disabilities Act of 1990
("ADA") and discrimination under the New York Human Rights Law
("NYHRL").  See Am. Compl. (Docket # 33) at ¶ 29, 35.[1]  Plaintiff
moved for summary judgment on January 15, 2015, and defendant
cross-moved to dismiss for failure to state a claim (Docket ##
23, 28).[2]  The Court heard oral argument on both motions on July
15, 2015, denying the motions on the record and by brief Order
the following day.  Docket # 37.  The parties thereafter engaged

---

[1] Molina voluntarily dismissed an equal protection claim under §
1983 and a Monell claim against the City of Rochester.  See
Pl.'s Reply/Response in Opp. (Docket # 31) at 3 (dismissing
Monell claim); Pl.'s Mot. (Docket # 43) at 4 (dismissing equal
protection claim).   Plaintiff additionally stipulated to the
dismissal of individual named defendants Paul Holahan, Theo
Maxey, Charles Lundy, Thomas Belknap, Bar Meesh, Karen Simoni,
and Norman Jones.  See Stipulation and Order (Docket # 52).

[2] In accordance with the provisions of 28 U.S.C. § 636(c), the
parties have consented to the jurisdiction of this Court for all
matters, including dispositive motions.  See Docket # 13.

in further discovery, and plaintiff filed the instant motion, a second motion for summary judgment, on June 14, 2016. See Pl.'s Mot. (Docket # 43). Defendant cross moved for summary judgment on June 25, 2016. See Def.'s Mot. (Docket # 45). The Court heard oral argument on the motions on October 21, 2016 (Docket # 50), and both parties submitted post-hearing briefs to address questions that arose during the hearing. See Docket ## 49, 51. For the reasons stated below, plaintiff's motion for summary judgment (Docket # 43) is **denied**, and defendant's motion for summary judgment (Docket # 45) is **granted.**

## Factual Background

Richard Molina was hired by the City of Rochester (hereinafter "the City" or "defendant") in the Department of Environmental Services as an ESO/Trainee in September 2006. Ex. "C" attached to Def.'s Mot. (Docket # 45-6). He was appointed to the Solid Waste Management Division as an ESO I on February 12, 2007. See Pl.'s Mot. (Docket # 43-1) at 1. The primary duty of this position is to collect refuse and recycling along established routes within the City of Rochester. Id.

Plaintiff began having disciplinary issues soon after he began his employment with the City. His employee performance history notes that he (1) received a written reprimand for poor work performance on July 9, 2007; (2) was fined fifty dollars

2

for poor work performance/violating work on December 13, 2007; (3) received a written reprimand for poor work performance/absence on April 8, 2008; (4) had a one day suspension for poor work performance on July 7, 2008; (5) received a written reprimand for excessive sick leave on August 11, 2008 and another written reprimand on September 2, 2008 for "MVA-preventable"; (6) was suspended for three days for poor work performance on January 5, 2009; and (7) received a written reprimand for "MVA preventable" on August 9, 2010.  Ex. "C" attached to Def.'s Mot. (Docket # 45-6).  Notes from these infractions describe that plaintiff, among other things, did not service certain sections on his route, did not clean his truck, and did not drive safely.  Id.

Plaintiff began to have medical issues related to his job beginning in 2009.  Plaintiff injured his left shoulder while working and was placed on a "light duty" assignment beginning January 2, 2009.  See Pl.'s Mot. (Docket # 43-1) at 2. Plaintiff was out on Worker's Compensation from June 17, 2009 to June 17, 2010, and had rotator cuff surgery on his left shoulder in December 2009.  Plaintiff returned in June 2010 with no restrictions.  See id.; see also Def.'s Mot. (Docket # 45-2) at 2 (timeline of plaintiff's employment history).

Back on the job, plaintiff injured his other shoulder, his right shoulder, on August 18, 2010 and was out on Worker's

3

Compensation from August 19, 2010 to August 31, 2010.  See Ex. #
2 attached to Def.'s Post-Hearing Submission (Docket # 49) at 1.
He was then placed on light duty or out on Worker's Compensation
for most of the rest of 2010.  Def.'s Mot. (Docket # 45-2) at 2.
Plaintiff underwent right shoulder surgery in January 2011 and
was out on Worker's Compensation from January 20, 2011 to
January 6, 2012.  See Ex. # 2 attached to Def.'s Post-Hearing
Submission (Docket # 49) at 7.  On November 28, 2011, while out
on Worker's Compensation, plaintiff received a letter from the
City stating that his one year leave of absence provided by his
contract[3] would be exhausted on January 7, 2012, at which time he
would be removed from the payroll if he did not return to his
regular duty assignment.  See Pl.'s First Mot. for Summ. J.
(Docket # 23) at 27.

Plaintiff returned to full-duty work on January 6, 2012
with a disability status report from his doctor, P.K. Peartree,
MD, returning him to regular work with no restrictions.  See Ex.

---

[3] Civil Service Law § 71 states "[w]here an employee has been
separated from the service by reason of a disability resulting
from occupational injury . . . he shall be entitled to a leave
of absence for at least one year, unless his disability is of
such a nature as to permanently incapacitate him for the
performance of the duties of his position."  N.Y. Civ. Serv. Law
§ 71 (McKinney).    The law also provides that, even if
terminated, an employee can obtain reinstatement to his former
position if a medical examination confirms that he is physically
and mentally fit to return to his former position or a vacant
similar position. Id.

4

# 2 attached to Def.'s Post-Hearing Submission (Docket # 49) at
9.   A "physician's return to work form" completed by Registered
Nurse (RN) Samuel Cappiello of Occupational Health Centers of
New York, an affiliate of Concentra Medical Centers, on January
5, 2012, noted that plaintiff had restrictions of never crawling
and never lifting more than sixty pounds.   Id. at 10.   However,
a  "return  to  work  evaluation"  completed  by  a  physician
(signature  illegible)  at  Concentra  Medical  Center,  also  on
January  5,  2012,  stated  that  plaintiff  had  no  present
complaints,  had  full  range  of  motion  and  strength  in  the  right
shoulder, and repeated that plaintiff had "no limitations."   Id.
at 11.   Plaintiff's physician, Dr. Peartree, wrote a follow-up
letter to Human Resources on February 14, 2012, stating that
plaintiff  "ha[d]  requested  to  return  to  work  without
restrictions, anticipating a transfer to another department, but
has  continued  pain  in  the  shoulders."    Other  than  the
recommendation  for  transfer,  the  letter  asked  for  no  specific
accommodations  nor  listed  specific  work  related  restrictions.
Ex. "B" attached to Pl.'s Mot. (Docket # 43) at 8.

Molina was not transferred, however, and he continued to be
employed as an EOS I upon return from his Worker's Compensation
leave  in  January  2012.    He  continued  to  have  disciplinary
problems and in July 2012 received a ten-day suspension for
"faulty work performance" and then was cited for "misconduct" on

5

November 19, 2012.   Ex. "C" attached to Def.'s Mot. (Docket #
45-6).   A detailed letter from Paul Holahan, Commissioner of the
Department  of  Environmental  Services,  described  plaintiff's
"faulty  work  performance"  during  the  prior  three  months,
reciting incidences such as leaving work without permission,
exhibiting rudeness towards members of the public, failing to
service customers, working without proper safety attire, and
being involved in a motor vehicle accident with a City truck.
See Ex. "D" attached to Def.'s Mot. (Docket # 45-7).   On June
21, 2013, plaintiff received a Notice of Termination from the
City, outlining at least six additional instances of violations
of standards of conduct and procedure.   See Ex. "B" attached to
Def.'s Mot. (Docket # 45-5).

Plaintiff's lawsuit contends that the City's failure to
provide reasonable accommodations constituted discrimination and
retaliation on the basis of his disability, in violation of the
ADA, 42 U.S.C. 12112(b)(1),(3)(A) and (5), and the NYHRL, New
York Executive Law §§ 296, et. seq.   See Amended Complaint
(Docket # 33).

## Discussion

Presently before the Court are the parties' cross-motions
for summary judgment under Rule 56(c) of the Federal Rules of
Civil Procedure, each alleging that there is no genuine dispute

of material fact between the parties. Plaintiff claims that the
City's failure to engage in an interactive process to
accommodate plaintiff's disability was a violation of the ADA,
entitling him to summary judgment. Defendant argues that
plaintiff has failed to establish a prima facie case of
discrimination by failing to show (1) a cognizable disability,
(2) a request for an accommodation, and (3) that he was
otherwise qualified to perform his job. Defendant also contends
that, even if this Court finds a prima facie case of
discrimination under the ADA, summary judgment should be granted
to defendant because plaintiff has failed to rebut defendant's
proffered legitimate and non-discriminatory reasons for
plaintiff's termination.

Summary Judgment Standard: Summary judgment is appropriate
where "the movant shows that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c). "By its very terms, the
standard provides that the mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement
is that there be no *genuine* issue of *material* fact." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in
original). A dispute of fact is material "only if it has some
effect on the outcome of the suit." Eagley v. State Farm Ins.

Co., No. 13-CV-66530, 2015 WL 5714402, at *6 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine issue exists as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. When deciding a summary judgment motion, courts must resolve all inferences and ambiguities in favor of the party against whom summary judgment is sought. Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. Of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The reasonableness of those inferences, though, depends on "the record taken as a whole." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of showing the absence of any issue of material fact rests with the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has established its prima facie entitlement to summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admission on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted). Put differently, the non-moving party must show that materials cited establish "the presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c). It is not enough for the non-movant to present evidence that just raises doubts; the non-movant must present "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" to support the non-moving party's claims is insufficient to defeat a motion for summary judgment. Id. at 252.

In analyzing the merits of a summary judgment motion in the context of a discrimination claim, courts must be cautious in granting relief where the conduct at issue "requires an assessment of individuals' motivations and state of mind . . . ." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001). These are "matters that call for a sparing use of the summary judgment device because of juries' special advantages over judges in this area." Id. (internal quotations and citations omitted). Nevertheless, "the salutary purposes of summary judgment – avoiding protracted, expensive, and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994); see also Abdu-Brisson v. Delta Air Lines,

Inc., 239 F.3d 456, 466 (2d Cir. 2001)("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). Ultimately, at this juncture of the case, the Court is limited to "issue-finding," and not resolution, while keeping "in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." Gallo v. Prudential Residential Serv., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).

Discrimination Under the Americans with Disabilities Act: The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against an otherwise qualified individual with a disability because of that disability. See 42 U.S.C. § 12112(a). According to the statute, the term "discriminate against a qualified individual on the basis of disability" includes

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business.

42 U.S.C. § 12112(b)(5)(A).

It is well established that disability discrimination claims brought pursuant to the ADA are evaluated under the burden-shifting paradigm set forth in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973). See McBride v. BIC Consumer Prods.
Mfg., 583 F.3d 92, 96 (2d Cir. 2009) (applying the McDonnell
Douglas test to ADA claims). "A plaintiff alleging employment
discrimination under the ADA bears the initial burden of
establishing a prima facie case." Ryan v. Grae & Rybicki, P.C.,
135 F.3d 867, 869 (2d Cir. 1998) (citing Wernick v. Fed. Reserve
Bank of N.Y., 91 F.3d 379, 383 (2d Cir. 1996)). To establish a
prima facie case of discrimination under the ADA, a plaintiff
must show that: (1) his employer is subject to the ADA; (2) he
is disabled within the meaning of the ADA or perceived to be so
by his employer; (3) he is otherwise qualified to perform the
essential functions of his job with or without reasonable
accommodation; and (4) he suffered an adverse employment action
because of his disability. Giordano v. City of New York, 274
F.3d 740, 747 (2d Cir. 2001).

Proving that a plaintiff is capable of performing his job
with a reasonable accommodation – the third factor – requires
its own separate analysis. To prove a prima facie reasonable
accommodation case, "a plaintiff must show that: '(1) [he has] a
disability under the meaning of the ADA; (2) an employer covered
by the statute had notice of [his] disability; (3) with
reasonable accommodation, [he] could perform the essential
functions of the job at issue; and (4) the employer has refused
to make such accommodations.'" Young v. New York City Dep't of

Educ., No. 09 Civ. 6621, 2010 WL 2776835, at *7 (S.D.N.Y. July 13, 2010) (quoting Rodal v. Anesthesia Grp. Of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)).  Once the plaintiff has established a prima facie case of disability discrimination, "the burden of production shifts to the defendant, who must articulate a legitimate nondiscriminatory reason for its challenged actions."  Rodal, 369 F.3d at 118 n.3.  If such a reason is offered, the burden returns to the plaintiff to produce adequate evidence to support a rational finding that the employer's explanation is false and that, more likely than not, discrimination was the real reason for the adverse action. McDonnell Douglas, 411 U.S. at 802-04.

Analysis: For the purpose of these motions, all parties stipulate that the City of Rochester is a "covered entity" under, and is subject to, the ADA, satisfying the first prong of the McDonnell Douglas test.  See Pl.'s Mot. (Docket # 43-1) at 1; Def.'s Mot. (Docket # 45-3) at 8.  Defendant also agrees that plaintiff suffered an adverse employment action at prong four, namely, his termination.  See Def.'s Mot. (Docket # 45-3) at 9.

Though the crux of plaintiff's motion for summary judgment centers on reasonable accommodations, defendant contends first that plaintiff's shoulder injury does not qualify as a disability under the ADA.  Specifically, defendant points to a letter from plaintiff's doctor, Dr. Peartree, returning

12

plaintiff to full work with no restrictions on February 14, 2012. See Ex. "I" attached to Def.'s Mot. (Docket # 45-12). Defendant states that there is no medical documentation submitted by plaintiff during his employment showing any restrictions, limitations, or present injuries which would have restricted his employment. See Def.'s Mot. (Docket # 45-3) at 8. Plaintiff counters that an earlier letter from Dr. Peartree dated March 11, 2011, shows that he was disabled and suffered from specific limitations. Plaintiff argues that this letter, sent to the City's Human Resources Department, constituted a request for an accommodation such that the City was required to engage in an "interactive process" to find a reasonable accommodation that would allow plaintiff to continue working. See Pl.'s Mot. (Docket # 43-2) at 2-3. Defendant denies that either letter constitutes a request for accommodations, and further counters that regardless, plaintiff has failed to demonstrate that he was otherwise qualified to perform his job. See Def.'s Mot. (Docket # 45-3) at 12-13. Defendant finally argues that plaintiff has not shown any causal relationship between his employment termination and his disability, nor has he rebutted the City's proffered legitimate non-discriminatory reason for his termination. Id. at 8-12.

Plaintiff's Disability Under the ADA: A disability is a "physical or mental impairment that substantially limits one or

more of the major life activities of [an] individual."   42
U.S.C. § 12102(1)(A).   In determining whether an individual has
a disability for purposes of the ADA, we apply the three-step
approach taken by the Supreme Court in Bragdon v. Abbott, 524
U.S. 624, 630 (1998).  See Weixel v. Board of Educ. Of City of
New York, 287 F.3d 138, 147 (2d Cir. 2002).   First, we must
consider whether plaintiff suffers from a physical or mental
impairment.   Second, plaintiff must identify the activity
claimed to be impaired and establish that it constitutes a
"major life activity."   Id.   Major life activities include,
*inter alia*, seeing, sleeping, walking, lifting, communicating,
and working.   See 29 C.F.R. § 1630.2(i)(1)(i).   The 2008
amendment to the ADA specifies that the term "major" shall not
be strictly construed, and "[w]hether an activity is a 'major
life activity' is not determined by reference to whether it is
of 'central importance to daily life.'"   29 C.F.R. §
1630.2(i)(2).   Third, plaintiff must show that his impairment
"substantially limits" the major life activity previously
identified.   "Whether an impairment substantially limits a life
activity is determined by considering: (1) the nature and
severity of the impairment; (2) the duration of the impairment;
and (3) the impairment's permanent or long-term impact."  Lundy
v. Town of Brighton, 732 F. Supp. 2d 263, 278 (W.D.N.Y. 2010)
(citing 29 C.F.R. § 1630.2(j)).

Plaintiff suffered consecutive shoulder injuries during his employment, resulting in two surgeries and subsequent leaves of employment for considerable portions of 2010 and 2011. While some of plaintiff's injuries seem to have healed over time and with surgery, plaintiff alleges ongoing issues that render him disabled under the terms of the ADA. The Court finds it helpful to discuss plaintiff's injuries in two distinct time periods: The first period dates from the beginning of plaintiff's employment with the City — September 2006 through January 5, 2012, the day before plaintiff returned to work from his last documented leave. This first period includes plaintiff's two shoulder surgeries. The second period commences on January 6, 2012, when plaintiff returned to work, and ends with plaintiff's termination on June 21, 2013.

During the first time period, plaintiff tore his left shoulder in 2008 which was operated on in 2009, and then injured his right shoulder in 2010 and had surgery on that shoulder in January 2011. See Ex. "B" attached to Pl.'s Mot. (Docket # 43) at 8; Ex. "N" attached to Def.'s Mot. (Docket # 45-17) at 7. Plaintiff's physician, Dr. Paul Peartree, submitted a letter to the City's Human Resources Department on March 16, 2011, discussing plaintiff's limitations. Dr. Peartree stated that "repetitive heavy lifting has led to bilateral shoulder injuries that have required surgery." Dr. Peartree opined that plaintiff

15

would

> likely have some ongoing restrictions with his
> shoulders. It is my recommendation that he be
> transferred to a different department or position that
> does not require repetitive heavy use of his arms. He
> should be able to lift up to 20 pounds continuously
> below shoulder level, up to 25 pounds occasionally,
> and rarely 50 pounds of over.

Ex. "A" attached to Pl.'s Mot. (Docket # 43).

Aside from this letter, the record contains little other medical evidence illuminating the nature of Molina's injuries. A January 20, 2011 assessment from the University of Rochester Medical Center deferred judgment on whether plaintiff was able to perform the essential functions of his job without restriction to Dr. Peartree. See Def.'s Post-Hearing Submission (Docket # 49-2) at 3. The assessment diagnosed right shoulder strain and noted that plaintiff would be following up with Dr. Peartree, but indicated no restrictions or limitations. Id.

Thus, it is based on a very limited record that plaintiff asserts a disability under the ADA. There is no dispute that plaintiff's right shoulder injury qualifies as a physical impairment. He had surgery on both shoulders and testified at his deposition that he suffers from ongoing pain and is unable to perform heavy lifting, certain types of physical training such as pull ups, or heavy manual labor. See Ex. "N" attached to Def.'s Mot. (Docket # 45-17) at 12, 18. Dr. Peartree's opinion restricted plaintiff considerably, including no heavy

16

repetitive lifting, occasional lifting up to twenty-five pounds and rare lifting over fifty pounds.   Importantly, Paul Holahan, the Commissioner of the Department of Environmental Services for the City of Rochester during plaintiff's employment, testified at his deposition that there is no job in Environmental Services that could be performed by someone permanently needing the type of restrictions contemplated by Dr. Peartree.   See Ex. "J" attached to Def.'s Mot. (Docket # 45-13) at 3-4 ("It's heavy work.   That's not reasonable accommodation . . . [I] can't have people that can't work in that department.   That's just too light . . . 10 pounds.").

Viewing the record in a light most favorable to the plaintiff, I find that a reasonable jury could find Molina disabled under the ADA during the period before January 5, 2012, and thus defendant is not entitled to summary judgment on this ground.   Based on the lifting limitations imposed by Dr. Peartree, plaintiff was substantially limited in his ability to lift, and according to the head of his department, that limitation prevented plaintiff from performing any job in Environmental Services.   Indeed, plaintiff was out of work on Worker's Compensation from January 20, 2011 to January 6, 2012, indicating that he was unable to work.[4]   Plaintiff's shoulder

---

[4]   The Court recognizes that the standard for determining occupational injury under NYS Worker's Compensation Law is

injury substantially limited his ability to work. See Morris v. Town of Islip, No. 12-CV-2984, 2014 WL 4700227, at *10 (E.D.N.Y. Sept. 22, 2014) ("[T]o show substantial limitation [in ability to work] under the ADA a plaintiff must prove that he is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'") (quoting McDonald v. City of New York, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011) and 29 C.F.R. § 1630.2(j)(3)(i)).

However, plaintiff's disability status changed when he returned to work on January 6, 2012 from his Worker's Compensation leave. His return was accompanied by a disability status report completed by Dr. Peartree dated January 5, 2012, returning plaintiff to "Regular work / no restrictions." See Def.'s Post-Hearing Submission (Docket # 49-2) at 9. An accompanying "physical abilities summary" completed by RN Samuel Cappiello noted minimal limitations, including never lifting

different from the standard to find disability under the ADA. The Court only notes plaintiff's Worker's Compensation leave as one factor contributing to its assessment of his disability, not as dispositive of that issue. See EEOC Enforcement Guidance: Worker's Compensation and the ADA, EEOC Notice Number 915.002, July 6, 2000; cf. Williams v. Salvation Army, 108 F. Supp. 2d 303, 312 at n.9 (S.D.N.Y. 2000) (finding estoppel inappropriate where plaintiff was denied Worker's Compensation and then claimed disability under the ADA, stating "the prior worker's compensation determination does not entirely resolve the issue of disability discrimination raised here").

over sixty pounds or crawling.  Id. at 10.  A "return to work evaluation" completed at Concentra Medical Centers on January 5, 2012 with an illegible doctor's signature states that plaintiff has no restrictions and no complaints, "full range of motion and strength of right shoulder, no limitations."  Id. at 11.

Dr. Peartree supplemented these evaluations with a letter dated February 14, 2012.  In his letter Dr. Peartree stated:

> Mr. Molina has been a patient of mine for the past 2 years for bilateral shoulder problems.  He has undergone surgical procedures on both shoulders.  He continues to have pain primarily when working in the recycling department due to repetitive lifting.
>
> He has requested return to work without restriction, anticipating a transfer to another department, but has continued pain in the shoulders after being placed back in his original position.  My recommendation would be that he be transferred to a different department within the city of Rochester.
>
> There are no specific restrictions but he will continue to have issues with his shoulders working in his current department, and I think it would be in the best interest of both parties to make this transfer.

Ex. "B" attached to Pl.'s Mot. (Docket # 43).  A straightforward reading of these medical records shows that plaintiff no longer had the same limitations to his ability to lift and work that he had in 2011.[5]

---

[5] At oral argument, plaintiff's counsel argued that the Court should disregard Dr. Peartree's opinion that Mr. Molina had no restrictions because he was trying to satisfy plaintiff's need to return to work since his Worker's Compensation had run out. Counsel asked the Court to make such an assumption based on a November 28, 2011 letter from the City stating that plaintiff

This assessment is consistent with other evidence in the record, including the deposition testimony of Thomas Belknap, plaintiff's supervisor:

Q: Unless [a light duty request form] was filled out and considering the evaluation in [the return to work evaluation from Concentra] on January 5, 2012, would [plaintiff] have been eligible for a light-duty assignment?

A: No.

Q: Why is that?

A: Because his doctor gave him no restrictions. A light duty-assignment is a limited time and a limited number of people for limited ability for - for our employees. We're trying to get the employee back to work to a full-duty status. Rick's doctor's statement there says that he has no restrictions. He would never have been offered a light duty assignment.

Ex. "K" attached to Def.'s Mot. (Docket # 45-14) at 12 (emphasis added). Similarly, Theodore Maxey, assistant superintendent for the City, testified that Dr. Peartree's letter cleared plaintiff from his injury and returned him to full-duty work. See Ex. "L" attached to Def.'s Mot. (Docket # 45-15) at 7. Contrary to plaintiff's contentions that he was disabled, the record here is clear that plaintiff was returned to work with full range of motion and no restrictions. See McDonald v. City of New York,

---

had to return to "work at a regular duty assignment on or before January 7, 2012, [or else he would] be removed from the City" payroll. Pl.'s First Mot. for Summ. J. (Docket # 23) at 27. However, the Court will not draw such assumptions or conclusions without some admissible evidence on the record. None is present here.

786 F. Supp. 2d 588, 608 (E.D.N.Y. 2011) ("These vague and ambiguous descriptions by plaintiff of his limitations, coupled with the record evidence that plaintiff was cleared by his doctor to walk up to three miles per day cannot support a finding by a rational factfinder that plaintiff was substantially limited in the major life activities of walking or standing."); see also DeMarco v. CooperVision, Inc., No. 06-CV-6187-CJS, 2009 WL 656337, at *12 (W.D.N.Y. Mar. 11, 2009) ("'Plaintiff's mere allegation that she was 'disabled,' without supporting medical evidence, is insufficient to create a genuine issue as to whether she was substantially limited in any major life activity.'" (citation omitted)); Croons v. N.Y. State Office of Mental Health, 18 F. Supp. 3d 193, 211-12 (N.D.N.Y. 2014) (finding no disability where "examining physicians cleared plaintiff to return to work 'immediately' provided he limited the weight he lifted with his right shoulder and stayed out of an environment where he may have interactions with violent people"). Because there is no genuine factual dispute as to whether plaintiff was disabled following his return to work on January 6, 2012, I **grant** defendant's motion for summary judgment as to this time period. Accordingly, the Court turns to step three of the McDonnell Douglas analysis only for the period prior to January 6, 2012.

Request for Reasonable Accommodation: Having found that

21

Molina was suffering from a disability under the ADA for the period prior to January 6, 2012, the Court next assesses whether plaintiff was able to perform the essential functions of his job with an appropriate accommodation. To prove a prima facie reasonable accommodation case, a plaintiff must show that "(1) [he has] a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Rodal v. Anesthesia Grp. Of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).

Here, the parties dispute whether a request for an accommodation was ever made. Plaintiff argues that both of Dr. Peartree's letters — dated March 16, 2011 and February 14, 2012 — were requests for accommodation which the City ignored. Defendant responds that the letters were not requests for accommodation, and if anything were requests to be transferred to a different department which is not an accommodation but is instead a "wholly different job." See Def.'s Mot. (Docket # 45-3) at 9. Even if Dr. Peartree's letters were requests for accommodation, plaintiff must also show that he was able, with or without accommodation, to perform the essential functions of the job.

"Generally, 'it is the responsibility of the individual

22

with a disability to inform the employer that an accommodation is needed.'" Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (quoting 29 C.F.R. pt. 1630, app. at 363 (2003)). However, the notice requirement for a request for accommodation is not a heavy burden. "Because defendants possess superior access to information regarding their own facilities . . . they are typically in a position far more easily to refute a plaintiff's proposal as unreasonable than is a plaintiff to prove otherwise." Roberts v. Royal Atlantic Corp., 542 F.3d 363, 371 (2d Cir. 2008).

Based on the record before the Court, I find that Dr. Peartree's March 11, 2011 letter sufficiently put the defendant City on notice of plaintiff's work-related limitations. The letter, sent to the City's Human Resources Department, is clearly an alert to the City regarding plaintiff's physical limitations. The letter also contains a request for transfer, which can be considered a reasonable accommodation under the law. See 42 U.S.C. § 12111(9)(B). The City has not proffered evidence regarding a standard process for an employee to request reasonable accommodations.[6]   Perhaps Dr. Peartree's letter was

---

[6] Indeed, deposition testimony from Paul Holahan, Commissioner of the Department of Environmental Services, shows confusion over what the proper mechanism for requesting an accommodation would have been. Holahan testified "hopefully somebody would have directed him. If - if there was a process to get started, this [letter] could, you know, have started the process, but . . . I

not sufficient, by itself, to constitute a formal request for an accommodation; nor was the City necessarily obliged to take the letter as a final determination that plaintiff was disabled or did in fact need accommodation. But the letter indisputably put the City on notice such that they had a duty under the ADA to investigate further, which they did not do. See Mineweaser v. City of North Tonawanda, No. 14-CV-00144-RJA-JJM, 2016 WL 3352046 (W.D.N.Y. Mar. 21, 2016) (finding plaintiff's written letter a request for accommodation, though it was reasonable for the defendant to request additional paperwork and medical documentation in order to complete a formal request); see also Graves v. Finch Pruyn & Co., 457 F.3d at 185 (finding that plaintiff's verbal request for unpaid leave constituted a request for an accommodation such that it triggered a duty on the part of the employer "to investigate that request and determine its feasibility").

Satisfying the notice requirement does not complete the Court's analysis at the third prong of the McDonnell Douglas test, however. Where it is alleged that there was a failure to accommodate, "the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.'" McMillan v. City of New York,

---

don't know." Ex. "C" attached to Pl.'s Mot. (Docket # 43).

711 F.3d 120, 126 (2d Cir. 2013) (quoting McBride v. BIC Consumer Prods., 583 F.3d 92, 96 (2d Cir. 2009)). "This burden is not heavy: 'It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" McMillan, 711 F.3d at 127 (quoting Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995)).

The Court has no difficulty in finding that plaintiff has failed to meet his burden here, however light it may be. Despite plaintiff's insistence that Dr. Peartree's March 11, 2011 letter is a request for an accommodation, the letter only vaguely requests that plaintiff be transferred to a different department. See Ex. "A" attached to Pl.'s Mot. (Docket # 43). Though a request to transfer or be reassigned can be considered a reasonable accommodation under the law, plaintiff still maintains the burden to establish "that there was a vacant position into which he could have been transferred pursuant to then-existing civil service rules whose duties he could have performed." Jackan v. New York State Dept. of Labor, 205 F.3d 562, 566-67 (2d Cir. 2000) ("a plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred") (agreeing with the 3d, 7th, 11th, and D.C. Circuits on this

25

point).

The evidence in the current record supports a finding that an accommodation was not possible.   For instance, Paul Holahan, the Commissioner of the Department of Environmental Services, testified that "there's no job in environmental services that could have permanent restrictions" such as the ones suggested in Dr. Peartree's letter (lifting only up to ten pounds frequently and twenty-five pounds occasionally).    Ex. "J" attached to Def.'s Mot. (Docket # 45-13) at 4.   Defendant asserts that "all tasks of an EOS I were identical and only varied on a day to day basis," and thus plaintiff could not have been given permanent lighter duty within his position.   Def.'s Resp. (Docket # 48) at 5-6.    Aside from Dr. Peartree's letter requesting transfer, plaintiff has provided the Court with no guidance as to what accommodation would allow plaintiff to continue working, or to what position plaintiff is qualified to be transferred.[7]   On this point, plaintiff's "evidence" consists of one internet print-out

---

[7] Moreover, at the time that Dr. Peartree sent his first letter, plaintiff was out on Worker's Compensation, presumably because he was unable to work.   "[W]here an employee concedes that he is unable to work at all, he is *per se* unable to perform the essential functions of his position."   Daley v. Cablevision Sys. Corp., No. 12-CV-6316 (NSR), 2016 WL 880203, at *5 (S.D.N.Y. Mar. 7, 2016), aff'd, No. 16-991, 2017 WL 506977 (2d Cir. Feb. 6, 2017) (citations omitted); see also Piccolo v. Wal-Mart, No. 11-CV-406S, 2012 WL 1965440, at *8 (W.D.N.Y. May 31, 2012) (medical evidence showed that plaintiff suffered from a "total disability" which "would have simply excluded him from the position entirely").

page listing departments within the City of Rochester, including, *inter alia,* "Chief of Staff," "About the Department of Finance," and "Assistant to the Mayor." Ex. "G" attached to Pl.'s Mot. (Docket # 43). It is unclear what plaintiff even suggests with this exhibit, but it certainly does not meet the burden born by him to identify accommodations or other actual jobs that he is qualified to perform. In short, the City's failure to engage in an interactive process does not alone form the basis of an ADA claim in the absence of evidence that accommodation was possible. See McBride v. BIC Consumer Products Mfg., 583 F.3d at 100 ("the ADA imposes liability for . . . discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible") (agreeing with every other circuit as to this point); see also Sheng v. M&T Bank Corp., 848 F.3d 78, 87 (2d Cir. 2017) ("The regulations implementing the ADA are consistent with our view that a failure to engage in a good faith interactive process is not an independent violation of the ADA.").

Because plaintiff has failed to show the existence of any accommodation that would make him qualified to perform his job, defendant's motion for summary judgment is **granted** and plaintiff's motion for summary judgment is **denied**.

Reasons for Termination: Even assuming, *arguendo,* that

27

plaintiff could establish a prima facie case of discrimination, there is an additional reason why the City is entitled to summary judgment, namely that no reasonable juror could dispute that the defendant has proffered legitimate, non-discriminatory, non-pretextual reasons for plaintiff's termination.   Defendant "must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action."   Heyman v. Queens Village Comm. For Mental Health for Jamaica Comm. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999).   "The defendant's burden is [] light.   The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."   Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).   If the defendant provides such a reason, the presumption of discrimination "drops out of the picture."   Id.   The ultimate burden then shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext" for intentional discrimination.   Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).

This record pays tribute to a finding that the reason for plaintiff's termination was his poor performance and misconduct

28

at work.   Plaintiff has a long history of misconduct on the job
beginning  in  July  2007,  less  than  one  year  after  he  began
working  for  the  City.    See  Ex.  "C"  attached  to  Def.'s  Mot.
(Docket  #  45-6).    A  letter  dated  October  26,  2012  from
Commissioner  Paul  Holahan  to  Refuse  Operations  Manager  Karen
Simoni  outlines  numerous  instances  between  August  28,  2012  and
October 22, 2012 of plaintiff's (1) faulty work performance, (2)
misconduct,  (3)  violations  of  various  workplace  standards,  (4)
absences  without  authorization,  (5)  rudeness  toward  members  of
the  public,  (6)  refusal  to  obey  orders  of  supervisors,  (7)  use
of  profane  language  on  the  job,  (8)  failure  to  wear  safety
equipment,  and  (9)  failure  to  report  a  motor  vehicle  accident
involving  a  City  vehicle.    See  Ex.  "D"  attached  to  Def.'s  Mot.
(Docket  #  45-7).    Plaintiff  provided  some  insight  into  a  few  of
these  incidences  during  a  documented  due  process  meeting,  but
largely failed to rebut the claims of his poor performance.   See
Ex.  "E"  attached  to  Def.'s  Mot.  (Docket  #  45-8).    For  instance,
when asked why he left work at 1:07 p.m. to attend a doctor's
appointment  at  3:30  p.m.,  plaintiff  responded  "can  I  get
something to eat? I don't know where Penfield is."   Id. at 4.
Based  on  this  string  of  disciplinary  issues  in  2012,  plaintiff
was  suspended  for  ten  days.    See  Ex.  "F"  attached  Def.'s  Mot.
(Docket  #  45-9).    Plaintiff's  termination  letter  dated  June  21,
2013,  outlines  additional  instances  of  insubordination,  failure

to perform his job adequately, and leaving work early. See Ex. "B" attached to Def.'s Mot. (Docket # 45-5). In short, defendant has provided sufficient evidence of legitimate non-discriminatory reasons for terminating plaintiff.

Given the extensive record of Molina's job related misconduct, the burden shifts to plaintiff to show that the reasons given by the City for terminating him are pretext for discrimination. Plaintiff offers no explanation for his disciplinary history and points to no admissible evidence suggesting that misconduct never occurred or was misunderstood. Because plaintiff's own misconduct was itself a valid non-discriminatory justification for his termination from employment, summary judgment in favor of the City is warranted. See Jackson v. Nor Loch Manor Healthcare Facility, 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004), aff'd, 134 Fed. App'x 477 (2d Cir. 2005) (granting summary judgment where plaintiff failed to show that defendant's reason for termination was pretextual, stating "[c]ertainly, an employer is entitled to discharge an employee who fails to follow company rules and fails to appear for work without notification"); see also Gaidasz v. Genesee Valley Bd. Of Co-op Educ. Sys., 791 F. Supp. 2d 332, 337 (W.D.N.Y. 2011) (granting summary judgment to defendant where plaintiff failed to rebut defendant's reasons for adverse employment action — plaintiff's poor attitude, lack of cooperation, failure to abide

by standard safety procedures, failure to achieve expected productivity, and inappropriate use of work time); Brown v. The Pension Boards, 488 F. Supp. 2d 395 (S.D.N.Y. 2007) (plaintiff failed to demonstrate defendant's reason for termination — violation of company policy — was pretextual).

Retaliation Claim Under the ADA: Under the McDonnell Douglas burden shifting framework, in order to prove retaliation under the ADA, plaintiff must first establish a prima facie case of retaliation by showing "that 1) he engaged in an activity protected by the ADA; 2) the employer was aware of this activity; 3) the employer took adverse employment action against him; and 4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Once plaintiff has made out a prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." Id. at 721. Then plaintiff must then show that this non-retaliatory reason "is merely a pretext for impermissible retaliation." Id. (citation omitted).

Based on plaintiff's failure to rebut defendant's proffered reason for his termination, his retaliation claim is denied and summary judgment is **granted** to the defendant. See Widomski v. State University of New York (SUNY) at Orange, 748 F.3d 471, 476 (2d Cir. 2014) (affirming summary judgment for defendant on

retaliation claim where plaintiff failed to provide competent evidence of pretext); Daley v. Cablevision Sys. Corp., No. 16-991, 2017 WL 506977, at *1 (2d Cir. Feb. 6, 2017) (affirming summary judgment in retaliation claim under the ADA where plaintiff failed to "present "evidence that could reasonably establish that [defendant's non-discriminatory] reasons were pretextual").

Discrimination under the New York Human Rights Law:   In discrimination and retaliation claims brought under the New York Human Rights Laws, federal courts apply the McDonnell Douglas burden-shifting framework.   See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006).   Because the Court's analysis of plaintiff's NYHRL claim is substantially the same[8] as its analysis under the ADA, the defendant's motion for summary judgment on the NYHRL claim is **granted** for the same reasons as set forth in the Court's analysis of the federal claims.

## Conclusion

For the reasons stated above, plaintiff's motion for

---

[8] The Court notes that the NYHRL defines "disability" more broadly than does the ADA.   See Treglia v. Town of Manlius, 313 F.3d 713, 723-24 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000) (per curiam).   However, this does not alter the Court's assessment of reasonable accommodations under the McDonnell Douglas test, nor does it affect the fact that plaintiff has failed to rebut defendant's proffered non-discriminatory reason for plaintiff's termination.

summary judgment (Docket # 43) is **denied**, and defendant's motion for summary judgment (Docket # 45) is **granted**.   This action is **dismissed** with prejudice.   The Clerk of Court is directed to enter a judgment for defendant accordingly.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    March 30, 2017
          Rochester, New York

33